Feb. 1, }
  1910. }

## OPINION OF THE JUSTICES.

The statutory provision that the word "town," when used with reference to school affairs, shall be held to mean "district" (Laws 1909, c. 23, s. 1) was not intended to include special school districts.

The word "town," as used in the act providing for an apportionment of state aid among common schools (Laws 1909, c. 158), does not include special school districts.

*To the Justices of the Supreme Court:*

The governor and honorable council, being charged by section 7, of chapter 158, of the Laws of 1909, with the supervision of the expenditure of the annual appropriation of $80,000 provided by said chapter for the support and encouragement of common schools, require the opinion of the justices upon the following questions:

1. Does the provision in section 1, of chapter 23, Laws of 1909, that "the word 'town' wherever used in the statutes in connection with the government, administration, support, or improvement of the public schools shall be held to mean district," apply to chapter 158, Laws of 1909?

2. The town of Lebanon is divided for school purposes into three districts. Neither of these districts, as such, has a population enumerated by the last federal census, nor as a distinct organization has any of them an equalized valuation distinct from the equalized valuation of the town. The aggregate population of these districts, which constitutes the population of the town, is 4,965, according to the last published federal census, and the equalized valuation of the three districts taken together is $3,929 per pupil of average attendance for the year 1908. These districts have special, independent, and complete organizations of their own, and all of them come within the conditions of said act in respect to population, valuation, average school attendance, etc.

Are these districts entitled to share in the apportionment of said annual appropriation of $80,000?

3. The Union school district of Penacook comprises a part of Boscawen and a part of the city of Concord. The district is a corporation entirely distinct and apart from either Boscawen or Concord. It has no distinct and separate census enumeration made in accordance with the last federal census, nor as a distinct organization has it any "equalized valuation." The city of Concord is not entitled to share in said annual appropriation of

$80,000 under the provisions of said act. The town of Boscawen is entitled to share in the appropriation of $80,000 under the provisions of said act. The Union school district of Penacook comes within the conditions of said act in respect to population, valuation, average school attendance, etc.

From the foregoing statement, is the Union school district of Penacook entitled to share in the apportionment of said annual appropriation of $80,000.

HENRY B. QUINBY,   <em>Governor.</em>

A. M. FOSS, <br>
HENRY W. BOUTWELL, <br>
ALBERT ANNETT,      }    <em>Councilors.</em> <br>
JAMES G. FELLOWS, <br>
LYFORD A. MERROW,

*To His Excellency the Governor, and the Honorable Council:*

The title of chapter 23, Laws 1909, indicates that the statutory definition of the word "town," when used in reference to school affairs, was not intended to include special school districts. The chapter is entitled "An act in amendment of chapter 89 of the Public Statutes, and defining the town school district." The intent thus shown by a consideration of both the text of the act and its title might have been more fully expressed in the text alone, by saying "the word town . . . shall be held to mean town school district." This legislative declaration of the sense in which they made use of certain language is of the highest value in determining what the same legislators meant when they subsequently used the same language.

It is our opinion that the word "town," as used in section 1, chapter 158, Laws 1909, does not include in its meaning special school districts. This is manifest from the context. The population is to be determined by the last published federal census; the wealth of the town by its equalized valuation. School districts have neither a population ascertained and published by federal authority, nor a valuation fixed by the state board. It is not to be assumed that the legislators were ignorant of these facts. Indeed, the careful phrasing of the provision as to population—"the last published federal census"—is weighty evidence that the legislature intended to aid poor towns; while poor districts, carved from the territory of rich or populous towns, were to be left to their own resources. There are evident reasons why such a course might be thought to be just. It is immaterial what our opinion of these reasons may be. Their importance here is that they demonstrate that the action taken by the legislature is not unreasonable, and

therefore there is no occasion to seek to explain away the meaning and purport of the language used.

Other considerations in favor of the opposite conclusion have been called to our attention. It is suggested that the conclusion we have arrived at will result in taxing one needy district for the benefit of another no more needy; that we are bound by a legislative meaning given to the word " town " by chapter 23, Laws 1909; that a prior legislature enacted a statute referring to equalized valuation of special districts; and that the legislative purpose to be made effective is to aid all schools which are in equal need. If it were granted that these reasons were sufficient to lead one to the conclusion contended for, the practical result would not be changed. As already pointed out, special districts have no equalized valuation, and there is no law under which such valuation can be determined. Neither is their population provable by the last published federal census. The prescribed data, by which alone their *status* could be shown, does not exist. To say that in some proceeding before some tribunal these facts might be found with approximate correctness, and when so found could be substituted for the exact facts prescribed by the statute, is to say that radically defective legislation may be amended by judicial or executive action. It is our opinion that this cannot be done.

The three inquiries are all answered in the negative.

FRANK N. PARSONS.
REUBEN E. WALKER.
GEORGE H. BINGHAM.
JOHN E. YOUNG.
ROBERT J. PEASLEE.

February 1, 1910.